Good morning, Your Honor. May it please the Court, Blake Lobes on behalf of Appellant and Defendant Elias Georgopoulos. And I knew you were calling our case before you mentioned the names because the names are not as readily apparent how they're pronounced. I'd like to address Plaintiff's claim about First Amendment retaliation by use of force by Mr. Georgopoulos first. Assuming all inferences in Plaintiff's favor, as you must, and even those that I believe are contrary to the record, this is a case where Mr. Georgopoulos started a fight after exchanging numerous insults and verbal insults back and forth with Mr. Abudiab, and there were some other words and language that was exchanged that may not be deemed fighting words, and then a fight occurred. Qualified immunity still applies in that circumstance. There's nowhere, anywhere is there a law in any jurisdiction or any State stating that a non-peace officer violates the First Amendment of the Constitution when he engages and reacts violently to words or insults from an individual, even if they're mixed with fighting words and other words that aren't fighting words. Never before has any court ever held that. It's not only peace officers who can be sued for retaliation or exercise of First Amendment rights. I mean, lots of people acting under color of State law are subject to the First Amendment. You don't have to be a peace officer to be subject to the First Amendment. That's correct. But that's the — I don't understand quite why this distinction that he's not a peace officer helps you on the First Amendment retaliation claim. Because the retaliation here is a use of force, and the use of force is different for peace officers. I'm sorry. He apparently, if we take the evidence on their side, he gets the other people, he gets the cops to arrest him. I'm sorry? He gets the cops to arrest him. That sounds like retaliation, too. Well, Your Honor, he didn't get the cops to arrest him. He made a complaint, as any witness can, and as a result of that complaint, along with the officers reviewing the evidence, the videotape — Well, isn't that a question of fact for the jury? Because it's disputed as to whether he lied in order to get the other guy arrested. So whether he lied or not, it's for the jury's side. I believe that's correct, if we're talking about a state law claim for malicious prosecution. But never before anywhere has that standard been applied to someone who's not involved in the criminal justice system. There has to be a conspiracy. If the rule is that any time any public employee lies, and as a result of that, someone gets arrested, that would be different. But that's not the rule, and it never has been. There has to be a conspiracy between the complaining victim — No, it does not have to be a conspiracy. There has to be a direct causal relationship without an independent judgment having intervened. Well, we have that here, if that's the test. In addition, because we have the police officers who did arrive, who interviewed the witnesses, who interviewed Mr. Abudiyab, who looked at the videotape and determined that Mr. Abudiyab was lying to them about what happened. They had a witness that was telling them that Mr. Abudiyab was the aggressor throughout and accosted Mr. George Doblos inside of the Taco Bell videotape establishing that he did exactly that, that he walked directly into the Taco Bell, towered over him, and then they stepped out, which is exactly consistent with what Mr. George Doblos said and completely inconsistent with Mr. Abudiyab's account. Then the officers made the arrest. It wasn't as though Mr. George Doblos just called up on the phone and said, hey, could you arrest this person for me? What about the earlier ticket that he got the police to write for him? That's a very different issue, and I would submit — But that may be looked at as retaliation. I think it could be. Well, and if it could be, why are you arguing that summary judgment was wrongfully denied? For two reasons. First, he never in his complaint or in discovery or in the summary judgment briefing ever argued, ever, that there was a retaliation claim for writing the ticket. Never once did he raise that issue. And even if he had, we believe that there is a qualified meeting that would still apply, not because Mr. George Doblos didn't owe it a duty to refrain from issuing tickets in retaliation for speech, but, Mr. George, the law is not clearly established that where there is probable cause, as there was in this case, that you look beyond probable cause to determine whether or not there was retaliatory speech. And there are several cases that make that law at best unclear. The Reikley Supreme Court case states that where there is probable cause, you cannot sue for retaliation. The recent case by the Ninth Circuit that we cited, the Acosta case, citing Reikley, makes the same determination that where there is probable cause, you cannot sue for retaliation. And the plaintiffs supply a different case, the Ford case, that may have a different proposition, but we're talking about qualified immunity here, and the law is far from clearly established. So there are two reasons why, that if he had brought a claim that the writing in the ticket was retaliation, there would still be entitled to qualified immunity. And I think that would have been, at least in terms of constitutional duty, there is one there. But there isn't a constitutional duty for a non-peace officer to refrain from using force in response to verbal insults. It doesn't mean that that's permissible. It means that he'd be liable under State law. He may be liable criminally. But in response to verbal insults, the theory of the case is in response to statements that he's doing his job improperly. Now, they might have been said in an insulting tone, but these weren't sort of random insults like, your mother is a da-da-da, and your sister's not no good either. It was you're doing your job improperly. That was one of many. Many others were, and I won't use the exact language here, F-U, I'm going to F you up. That was, there were at least 20 of those. And at the very beginning, there was one where he said something about doing his job, and that was before everything erupted into what it was, before the police had to separate him. Then it was just nothing but verbal obscene insults back and forth. And no case holds that when we're talking about, I'm not even talking about the fighting words issue yet, but that where there's mixed abusive language and language that may not be verbal insults, that a non-peace officer has a duty to refrain under the Constitution from using force in response to those words. And a peace officer's different, of course, because a peace officer, if they use force, it's not just a fight. It's a seizure. It's a violation of the Fourth Amendment if they use force in response to words. That's why, as the Fuca case explained in the Ninth Circuit, that the officers have an awesome responsibility when they're using force. And with that comes, if they use it incorrectly, a constitutional violation. It raises the bar in terms of the individual here, because there is no case saying that this would apply to non-peace officers. I think it's no different than saying... If we disagree with you with regard to whether the law is limited to peace officers, then would the factual disputes are such that qualified immunity was properly granted? I'm sorry, was properly done? Now, you're arguing that the law is not clearly established, that non-peace officers are applicable, that the law is applicable to non-peace officers, correct? Yes. That's your first line of argument. Yes. If we disagree with that, then was summary judgment properly granted in this case? No, I don't think it was, because we were talking just now about the First Amendment issue on the force claim. The other issue of fighting words is apparent in this case. And in every case in which an individual has used this type of language, and it's not just the language, it's the context. If we talk about what happened in the Taco Bell, after a road rage incident on Lombard, then they're separated by the police on Greenwich. Then Mr. Georgopoulos is eating his lunch, minding his own business, when Mr. Boutillab, busting through a front door, makes a beeline to him, stands over him and says something to him, which we don't have the audio of. Those are fighting words. He could have said what kind of standards you're getting, because it's the context. You just said we don't know what he said, and then you said those are fighting words. Right. You don't quite mean it that way. Well, actually, I do. I mean, the one case we cite, the Gower case, I think it's a Fifth Circuit case, they found fighting words to be someone squawking like a chicken. You know, on its own, if you squawk like a chicken, that's not fighting words. It's the context that matters. If somebody comes in and towers over someone after they were just separated from a physical alteration, and they say something, that's a threat, that they are engaged in a threatening, potentially violent interaction. He could have said, well, what do you think of the tacos here? That isn't in that context. And in all the cases that talk about context, those would be fighting words, because you don't just, you know, look, he called him this name, he called him that name, this name, and then he also said, I like the color of pants that you're wearing, therefore, he has protected speech. You have to look at the entire context. And here, there's no question these two were engaged in verbal insults back and forth. And if Mr. Georgiakos was the aggressor, we're not saying that there isn't a violation here somewhere. He'd be liable under State law, as would anyone, and would I. If, let's say, I finished a deposition with an individual, and then I went and had lunch, and while I was having lunch, the person came up to me and said, I don't like the way you do your job. I think you're a terrible attorney. Called me some names. I said, let's step outside and got in a fight. No one would think, it would come to their mind, that I might be violating that person's First Amendment rights just because I happen to work for the city. It would be no different than any other attorney who's engaged in a deposition. And that's what we have here. He's situated no differently than anyone else involved in a fight. You're insisting everything be seen in context, and now, all of a sudden, you're cutting off things so that it's not seen in context. So let's go back to do the whole context business. He's not just somebody coming up and talking to someone else. Right? I think he happens to be at work, but I don't think that there's any power that he brought by virtue of his authority of the parking ñ other than the ticket ñ by virtue of his authority under the State as a parking control officer into this context at all. He's no different than if he was a bus driver. Do you have any preference that he was wearing his uniform and utilized department-issued pepper spray? I don't think so. Why not? Because it could be ñ the department-issued pepper spray, although he had it, it's no ñ it's just a tool that he had, much like a stapler that might be issued by ñ to a city attorney. It's not something that he has more authority to use than anyone else. His use of pepper spray doesn't ñ his use of pepper spray doesn't invoke the Constitution because it's not a seizure. It's just a use of pepper spray. Anyone else ñ everyone else has the same right to have and use pepper spray that he had. Just because that particular tool was supplied by the department doesn't make it a constitutional violation. It could be a State law violation, but not a constitutional violation. You're over time. I'm sorry. Let's hear from the other side, but we will give you a chance to respond. I think I just lost track of him. Good morning, Your Honors. Joseph May on behalf of Plaintiff and Appellee Amjad Abudiyab. I'd like to address the First Amendment violence issue first. Mr. Loeb claims that it's not clearly established unless you're a peace officer. I'd like to ñ this case is cited in my brief, Duran v. City of Douglas, Arizona, 904 F. 2nd, 1372. It's from 1990. No less well established is the principle that government officials in general and police officers in particular may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Clearly established as of 1990 that if you're a government official, you can't abuse your authority to retaliate against somebody who insults you. That's not a general proposition. That's a fairly narrow statement of the law as of 1990. Again, Beck v. City of Upland, 527 F. 3rd, 853, Ninth Circuit case from 2008, said the same thing regarding the First Amendment cause of action. The First Amendment, the law clearly established that the person arresting someone in retaliation for their exercise of free speech rights was violated of clear ñ law clearly established at the time of Beck's arrest. And then they quote to Duran. So I think that there is no requirement that the person be a peace officer. I think a government official abusing his authority and retaliating for somebody exercising their speech, and there are other cases out there as well, that's clearly established to be a constitutional violation. So what do you allege were the retaliatory acts? The violence was one of them. And that's the one that's specifically alleged. I understand the other side's argument that we didn't specifically allege that issuing the parking ticket was retaliation. And I understand that they may not have had fair notice to deal with it. It was brought up for the first time on appeal and fairness to them. We may seek leave to amend it. That might be an issue for decision by the district court in the first instance. I understand that. And so I'm not going to make that argument here today. But the violence and the arrest, that was ñ there's nothing else in the record that suggests that this officer did this to this man for any other reason. They had a verbal exchange on the road. At one point, Mr. Abudiab said to Officer Georgopoulos, get a real job. This all started because he cut him off in traffic, allegedly, and then there was some sort of almost altercation. It was ñ it was broken up. And then inside the Taco Bell, the video is pretty clear. Mr. Abudiab does walk up to Mr. Georgopoulos, says something, doesn't touch him. And according to the witness, Chris Williams, he said something about a parking ticket, criticizing him for giving him a parking ticket when he pulled over on Frank ñ Greenwich Street because the officer was following him. He sees the officer following him. He pulls over and the officer says, oh, now you're illegally parked. I'm going to give you a parking ticket. So I'm not ñ I'm not arguing that that was the retaliation, but he commented on that. And that was protected speech. He's criticizing him for giving him a parking ticket maliciously. So your theory of retaliation is that there is retaliation if we have criticism. You gave me a parking ticket. It was ñ you were performing your job improperly. Georgopoulos says, let's take it outside, and wails on him. That's ñ that, the wailing on him, the fighting is then retaliation under the First Amendment, forbidden retaliation. I disagree with the Court's characterization of it as a fight, and I also disagree there's any evidence that, well ñ Did I say fight? I didn't. I thought wailing on him was the word I used. That one I agree with. Okay. To the extent I heard you say fight, if I'm mistaken, I apologize. Also, Georgopoulos, it's only ñ Your theory is, he says, you're doing your job improperly. You shouldn't have given me a ticket. Georgopoulos says, let's take it outside. They go outside, and Georgopoulos wacks him. Georgopoulos doesn't say, let's take it outside. That's his version. According to my client, he gets up to him and he says something. Maybe it was rude, but it had to do with the ticket, according to the witness. And my client turns and leaves without any further ado. And you can see on the video, he walks right out the door, and Mr. Georgopoulos immediately follows him outside. Mr. Georgopoulos himself admits that Mr. Abudiab never touched him, yet Mr. Georgopoulos pepper-sprayed him repeatedly in the face and punched him in the head. That's the retaliation. I guess what I'm trying to figure out sounds to me that you do not need for your theory of retaliation calling the police to make the arrest. All you need for your theory of retaliation is that after he's been criticized for doing his job improperly, Georgopoulos retaliates by hitting him. I guess that's correct. I don't need both of them, but I think they're both viable theories to pursue. And then, you know, the malicious prosecution under the Fourth Amendment. I'd like to point out that according to the defense, there needs to be a conspiracy with law enforcement. Your Honor pointed out that that's not a requirement, and I agree. There's a case, sorry, Galbraith v. County of Santa Clara, 307 F. 3rd, 1119, a Ninth Circuit case from 2002. This was a coroner who decided that a murder or that a death was actually a murder instead of a suicide, and then the husband of the victim was arrested and charged. And the Ninth Circuit allowed a malicious prosecution claim to proceed against him, and that was arguably reckless conduct. This is intentional conduct. He beats the man up, knows based on the record there's evidence that he knows that when he calls the police after beating somebody up, this isn't the first time he calls the police after beating somebody up, guess what? The victim gets arrested. That's an abuse of his official position. And the denial of qualified immunity is based on the fact that there's a factual dispute as to whether there was, in fact, malicious prosecution, whether the statements that he made to the police officers that then prompted the arrest, whether they were, in fact, true or not. Right? I agree with that. The police did arrest him. You know, it's interesting to note in the record itself there's a citizen's arrest form. Mr. Georgopoulos actually arrested Mr. Abudiyab, and so maybe the malicious prosecution claim would have been properly brought as both a malicious prosecution and false arrest, the Fourth Amendment claim, and that's another thing that if we seek leave to amend, that will have to be decided in the first instance by the district court. But Mr. Georgopoulos arrested Mr. Abudiyab, and then the police took him into custody. Then he had to show up in court and deal with these charges. So he was prosecuted, although it was very limited. At some point they dismissed all the charges. They realized there was a case there. I'd like to make one other point. This is the issue about retaliation for issuing the – well, okay. We decided I wasn't going to go into that, so I apologize. But as to qualified immunity, I think that Mr. Georgopoulos is trying to look at it in too narrow a light. I think it's true you can't look at these rights as very broad propositions, right? Is there a right to be free from malicious prosecution under the Fourth Amendment? You do need to look at it a little more narrowly. I think that what the other side wants is for you to look at it very narrowly, And that's not the law. It doesn't need to be a case directly on point. The contours of the right are what need to be clearly established. The other thing is that the case has been cited more and more frequently in recent years. This is Malley v. Briggs, the famous quote, This whole doctrine is intended for police officers to be able to make reasonable but mistaken judgments because their jobs are difficult and they face these tense situations. And if the law isn't clear and they take a reasonable step and it just so happens that the law – that they were wrong on the law, they're not held accountable for that. Intentionally and maliciously seeking somebody out and pepper-spraying them repeatedly in the face and hitting them in the head, there's no case in the country that I could find, and I looked far and wide, that allows qualified immunity for such a malicious and vicious act like that. It's not what the doctrine was intended for. If the Court extends Mr. Georgopoulos any qualified immunity for any of the actions described in the record taken into light and was favorable to plaintiffs, I think that would be a first and I think that would be extending the doctrine well beyond where it was intended to go. Lastly, unless there are questions from the Court, we raise the issue of the Court's denial of or grant of qualified immunity on the Fourth Amendment excessive force claim. Judge Patel, when she was the district court judge, she found that Mr. Georgopoulos was a law enforcement officer. His job is to enforce the laws, the parking laws. And that under Graham v. Conner, it's clear, all claims, that law enforcement used too much force in the course of the case. I think the problem on that is it's asymmetrical in terms of when you get an interlocutory appeal. Right. And so the question is an open question, I believe. There's a case, Supreme Court case Greenlaw v. United States. That case, it was a criminal defendant, took an appeal, thought his sentence was too long, and the government didn't cross-appeal. But the – I forget what circuit it came out of, but the court of appeals said, well, the district judge didn't apply the correct minimum sentencing, and so we're going to actually increase his sentence, even though they didn't file the cross-appeal. And the Supreme Court said you can't do that. But they did not specifically say you can't hear an issue raised that's not on cross-appeal. That was a very limited holding. In fact, there was a very long and detailed dissent authored by Justice Alioto joined by Stevens and Breyer pointing out that the majority did not expressly decide whether a cross-appeal is required to consider legal issues raised. I don't think you took my point. You get an interlocutory appeal when there has been a denial of qualified immunity. The officer gets to appeal that interlocutorily because the right for qualified immunity is immetrical. I understand. And I don't have the case on point. I believe there is authority, though, that where the issues are inextricably entwined, the court can consider the appellee's claim that qualified immunity was improperly granted as well. And that way, you know, it's for judicial economy. You'd like to have one trial. There should be one appeal. We don't want to make several trips back here, as much as we've enjoyed it and appreciate your time.  Thank you. You went over, but we'll give you a minute. Two quick points. Mr. May raised the issue with respect to the malicious prosecution that he cited, the case where a coroner who lied could be held liable for malicious prosecution under the Fourth Amendment. That's true. That's entirely different. There is no case where a complaining witness who allegedly lied to the police can be held liable for a violation of malicious prosecution standard under the Fourth Amendment. No case anywhere. It relates to just a witness who's complaining, and the allegation is that they lied, and that caused the arrest. Mr. May's point that this is actually a citizen's arrest makes my point for me. This is a citizen. This isn't a police officer who's lying in a report. It's not a coroner who lies to get someone prosecuted. It's not a DA. It is a citizen. It is an individual who allegedly lied, and the police came and arrested him. Then are you willing to give up the qualified immunity you got, that he can't appeal? Are you willing to give that up? I'm sorry? Are you willing to give up the qualified immunity that you did get? No, I wouldn't. No. I believe that the officer's entitled to the immunity. But the officer, it's different. You just said he's a citizen. He's just a complaining witness. Well, then you don't have color of law. It's kind of that if there's no qualified immunity because he's not a government government, he's not acting under color of law, then you don't have an issue anyway. It's kind of an even-if argument. Even if you assume that he was acting under color of law, his actions were not such that the Constitution was prohibiting them. Because for the force claim, it wasn't a seizure. For the malicious prosecution claim, he didn't have an active role in the arrest other than just allegedly lying to the police officers. And for the first-amendment retaliation claim for force, he just responded maybe appropriately to insults. But there's no law saying that there's a constitutional duty for him not to respond in that way. That would be the law. Okay. That would entitle him to qualified immunity. Thank you for your time. Thank you. Thank you very much. Thank both sides for their arguments. Ludhiab v. Georgopoulos now submitted for decision.
judges: Duffy, Fletcher, Nguyen